UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ISAIAH MCKINNLEY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

WHIRLPOOL CORPORATION

Defendant.

---------------------------------------------------------------

Docket No.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, **ISAIAH MCKINNLEY** ("Plaintiff" or "Mr. Evans"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant, Whirlpool Corporation, ("Whirlpool" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Plaintiff **Isaiah McKinnley** is a legally blind individual residing in New York County**,** whose central visual acuity with correction is 20/200 in his right eye and 20/250 in his left, with severe peripheral field constriction, as documented in Exhibit A – Legally Blind Diagnosis, dated June 3, 2025. Mr. McKinnley has been diagnosed with **retinitis pigmentosa**, a progressive retinal disorder that substantially limits his major life activity of sight. He relies exclusively on screen-reading software and keyboard navigation to access digital content and perform daily tasks. Despite his impairment, Mr. McKinnley actively engages with online platforms to research household appliances and products, compare prices, and make informed purchasing decisions.

2. Plaintiff brings this action against **Whirlpool Corporation**, the owner and operator of www.maytag.com, for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., and related state and local laws. Whirlpool is a global manufacturer of home appliances and markets the Maytag brand through its website, which serves as a primary gateway for product discovery, specifications, promotions, and retail access. Plaintiff attempted to use www.maytag.com on multiple occasions in October and November 2025 to research and purchase a refrigerator but was denied full and equal access due to persistent accessibility barriers.

3. On at least two separate visits to www.maytag.com, Plaintiff attempted to locate information about the Maytag® 36-Inch-Wide French Door Bottom Mount Refrigerator with Max Cool Setting – 25 Cu. Ft., a product that fits his kitchen dimensions and budget. He was unable to access product specifications, pricing details, or store locator features due to widespread accessibility barriers, including empty buttons, missing alternative text, unlabeled form fields, and inaccessible promotional banners, as confirmed by WAVE scans identifying 93 and 21 errors respectively. A SortSite scan was attempted but blocked by bot detection, further impeding independent verification. These barriers violate the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA, the recognized industry standard for digital accessibility.

4. Mr. McKinnley is on a fixed income and was actively comparing models with the support of his roommate, who offered to pay half the cost of the appliance. He remains interested in purchasing the same refrigerator and intends to return to www.maytag.com once it is accessible. His allegations are grounded in his actual encounters, not speculative harm, and satisfy the standing requirements articulated by the Second Circuit in *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022).

5. Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired,[1] including 2.0 million who are blind. According to a 2016 report published by the National Federation of the Blind, approximately 418,500 visually impaired persons live in the State of New York.[2]

6. Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

7. Defendant's website is not equally accessible to blind and visually impaired consumers. Plaintiff seeks a permanent injunction requiring Whirlpool Corporation to remediate www.maytag.com and adopt corporate policies, practices, and procedures that ensure ongoing compliance with the ADA, NYSHRL, NYCRL, and NYCHRL.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

---

[1] *See* United States Census Bureau Report.

[2] *See* 2016 National Federation for the Blind Report.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.)("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") & § 296 et seq.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

10. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Defendant conducts substantial and continuous business in this District through its interactive Website, www.maytag.com. Plaintiff accessed and attempted to use the website from his residence in New York County, which lies within the Southern District of New York. A significant portion of the discriminatory conduct giving rise to this action occurred within this District.

11. Defendant Whirlpool Corporation is a multinational appliance manufacturer headquartered in Benton Harbor, Michigan, and registered with the New York Secretary of State, and actively participates in New York's economic life through its online sales and marketing activities. Through www.maytag.com, Whirlpool enters into contracts with New York residents for the sale of household appliances and related services. These transactions involve the knowing and repeated transmission of digital content and commercial offers into New York. Courts have consistently held that such conduct supports personal jurisdiction over out-of-state operators. See *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *Panarra v. HTC Corp.,* No. 6:20-

cv-6991 (W.D.N.Y. Apr. 15, 2022).

12. Plaintiff attempted to access www.maytag.com in October and November 2025 to research and purchase a Maytag 36-Inch-Wide French Door Bottom Mount Refrigerator with Max Cool Setting – 25 Cu. Ft. The product fit his kitchen dimensions and budget, and he intended to split the cost with his roommate. However, Plaintiff was unable to access product specifications, pricing, or store locator features due to persistent accessibility barriers. Because these services are delivered through Defendant's website and Plaintiff engaged with them from within the Southern District of New York, venue is proper and jurisdiction is established.

13. Plaintiff seeks declaratory and injunctive relief to compel Defendant to remediate its website, implement ongoing accessibility monitoring, and ensure compliance with federal, state, and city laws. This action is not merely about technical compliance—it is about securing lawful access to essential digital services. Plaintiff's interest in purchasing a major household appliance through an accessible platform makes access to www.maytag.com both meaningful and necessary.

14. Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's website. Specifically, he was unable to complete a purchase of the refrigerator described above, access relevant product information, or locate nearby retailers. These barriers deterred Plaintiff from returning to the site and continue to exclude him from engaging with Defendant's digital offerings.

15. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, and Plaintiff respectfully requests that the Court affirm Defendant's obligations under the ADA and compel remediation of the website to ensure equal access to NVIDIA's products and

services.

## NATURE OF ACTION

16. The Internet is an essential tool for accessing information, conducting business, and performing everyday tasks such as shopping, banking, and managing household needs. For blind and visually impaired individuals like Plaintiff Isaiah McKinnley, digital access is not a convenience—it is a necessity. Mr. McKinnley relies on the Internet to research appliances, compare prices, and make informed purchasing decisions that support his independence and financial stability.

17. In October and November 2025, Plaintiff attempted to access www.maytag.com to research and purchase a Maytag 36 Inch Wide French Door Bottom Mount Refrigerator with Max Cool Setting – 25 Cu. Ft. The product fit his kitchen dimensions and budget, and he intended to split the cost with his roommate. However, he was unable to access product specifications, pricing information, or the store locator due to persistent accessibility barriers on the website. These barriers prevented him from completing the transaction and deterred him from returning.

18. Plaintiff is legally blind due to retinitis pigmentosa, a progressive retinal condition that severely restricts his visual field. He uses screen-reading software, including NonVisual Desktop Access (NVDA), to navigate websites and digital interfaces. Mr. McKinnley is proficient in using NVDA and relies on it to independently access online content.

19. For screen-reading software to function properly, website content must be coded in a way that allows it to be rendered into text. If the underlying code lacks semantic structure or proper labeling, blind users are unable to access the same information as sighted users. Plaintiff encountered this barrier on www.maytag.com when attempting to review product details and

locate a retailer for the refrigerator he intended to purchase.

20. Screen readers interpret content by extracting information from the website's code and presenting it through text-to-speech or Braille output. When websites fail to follow accessibility protocols, these tools cannot accurately convey the content. Plaintiff's experience with www.maytag.com included unlabeled buttons, missing alternative text, empty form fields, and inaccessible promotional banners, all of which rendered key product and support pages unusable.

21. The Web Content Accessibility Guidelines (WCAG) 2.1, published by the World Wide Web Consortium (W3C), provide a widely accepted framework for digital accessibility. These guidelines are used by corporations and government agencies to ensure that websites are accessible to individuals with disabilities. Defendant has failed to implement these standards on www.maytag.com, resulting in the exclusion of Plaintiff and others from accessing essential product information and services.

22. Plaintiff conducted WAVE scans of www.maytag.com, which revealed 93 and 21 accessibility errors on two separate pages. These included:

- Missing text equivalents for non-text elements
- Inaccessible forms and navigation structures
- Ambiguous link text and unlabeled buttons
- Empty headings and links
- Low-contrast visual elements
- Improperly nested markup and duplicate attributes

23. These barriers prevented Plaintiff from completing tasks such as reviewing product specifications, comparing models, and locating a retailer. A SortSite scan was also attempted but

blocked by the website's bot detection system, further impeding independent verification.

24. Websites are dynamic platforms that require ongoing monitoring to remain accessible. A one-time fix is insufficient. Plaintiff seeks not only remediation of the current barriers but also a commitment to continuous accessibility testing, including automated audits and real-world validation by disabled users. Without such measures, www.maytag.com will continue to exclude blind individuals from full participation in its digital offerings, undermining Plaintiff's ability to make informed purchasing decisions and live independently.

## STANDING

25. Plaintiff Isaiah McKinnley is a legally blind individual residing in New York County. He is a member of a protected class under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)-(2), and the New York City Human Rights Law. Mr. McKinnley has been diagnosed with retinitis pigmentosa, a progressive retinal condition that severely restricts his peripheral vision and renders him unable to access visual content without assistive technology.

26. Mr. McKinnley relies exclusively on screen-reading software, including NonVisual Desktop Access (NVDA), to navigate websites and perform essential tasks. NVDA converts visual web content into speech output, allowing him to independently access digital interfaces. He is proficient in using NVDA and immediately detects when a website fails to meet accessibility standards—such as when buttons are unlabeled, navigation is broken, or dynamic content lacks text equivalents.

27. On October 28, 2025, Plaintiff visited www.maytag.com to research a specific product: the Maytag 36 Inch Wide French Door Bottom Mount Refrigerator with Max Cool Setting

– 25 Cu. Ft. He selected this model based on its dimensions, energy efficiency, and promotional pricing. His roommate had agreed to pay half the cost, making the purchase financially feasible. Plaintiff intended to review the product specifications, confirm delivery eligibility, and complete the transaction.

28. Upon reaching the product page, Plaintiff encountered multiple barriers that prevented him from accessing the information he needed. The "Add to Cart" button was visually present but lacked a programmatically determinable label, causing NVDA to skip over it entirely. The product specifications were embedded in a dynamic table that used visual containers without text equivalents, making it impossible for NVDA to read key details such as cooling features, storage capacity, and warranty terms. The "Find a Retailer" link was unlabeled and nested within a mouse-hover menu that could not be activated using keyboard navigation. As a result, Plaintiff was unable to determine whether the product met his needs or where it could be purchased.

29. On November 3, 2025, Plaintiff returned to www.maytag.com to complete the purchase. He attempted to use the checkout flow but was blocked by additional barriers. The quantity selector relied on mouse-dependent sliders, and the promotional banner offering free delivery was presented as an image without alternative text. The form fields for ZIP code and delivery options were unlabeled, causing NVDA to announce them as "edit box" without context. Plaintiff could not confirm eligibility for delivery or proceed to payment.

30. On November 12, 2025, Plaintiff made a third attempt to access the same product page and complete the transaction. The barriers remained. He conducted a WAVE scan that revealed 93 accessibility errors, including 73 empty buttons, 12 missing alternative text elements, and 3 empty form labels. A SortSite scan was attempted but blocked by the website's bot detection

system, further impeding independent verification. These barriers prevented Plaintiff from completing the purchase or evaluating whether the product met his needs.

31. Plaintiff remains interested in purchasing the same refrigerator and intends to return to www.maytag.com once it is made accessible. His allegations are grounded in actual encounters with the website, not speculation. He identified a specific product, attempted to engage with the website on multiple occasions, described the precise barriers that blocked his access, and expressed a clear intent to return once those barriers are removed.

32. For Plaintiff, www.maytag.com is not merely informational—it is a transactional gateway to essential household appliances. His inability to access these integrated services constitutes a denial of equal access under Title III of the ADA and presents a credible threat of future harm. Like millions of Americans, Plaintiff relies on websites to perform essential tasks—whether locating products, checking availability, or accessing time-sensitive promotions. These digital platforms are not optional; they are integral to daily life. For individuals with disabilities, the ability to navigate a website independently is a matter of dignity, autonomy, and equal participation in the modern marketplace.

## CLASS ACTION ALLEGATIONS

33. Plaintiff Isaiah McKinnley brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.maytag.com and were denied equal access to its products, services, and support due to persistent digital accessibility barriers during the relevant statutory period.

34. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.maytag.com and were similarly denied equal access to its offerings due to the same systemic barriers.

35. Common questions of law and fact exist among the Class, including:

- Whether www.maytag.com qualifies as a "public accommodation" under Title III of the ADA;
- Whether Defendant's website constitutes a "place or provider of public accommodation" under the NYCHRL;
- Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to NVIDIA's products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

36. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

37. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

38. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

39. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

40. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.maytag.com and faced exclusion.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

41. Plaintiff, Isaiah McKinnley on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

42. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

43. Defendant's website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

44. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

45. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also

includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

46. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

47. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
## (Violations of the New York City Human Rights Law)
## ("NYCHRL")

48. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the New York City Sub-

Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

49. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

50. Defendant is subject to NYCHRL because it owns and operates the Website www.maytag.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

51. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

52. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

53. Defendant's actions constitute willful intentional discrimination against the Sub-

Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

54. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

55. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

56. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

57. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

58. Plaintiff is also entitled to reasonable attorneys' fees and costs.

59. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies,

procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**<u>THIRD CAUSE OF ACTION</u>**
**(New York State Human Rights Law)**
**("NYSHRL")**

60. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

62. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

63. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

64. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

65. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager,

superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

66. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

67. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

68. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or

accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

69. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

70. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

71. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

72. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

## FOURTH CAUSE OF ACTION
**(Violation of New York State Civil Rights)**
**("NYCRL")**

73. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

75. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

76. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

77. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

78. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

79. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

80. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

81. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

82. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

83. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

84. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182,

*et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

85. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
November 19, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com